IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Gilbert,                 :
            Petitioner          :
                       :
        v.              : No. 1576 C.D. 2016
                       : Submitted: January 20, 2017
Workers' Compensation Appeal   :
Board (Drug Emporium),        :
             Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: February 16, 2017

Michelle Gilbert (Claimant) petitions for review from a decision of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) grant of Drug Emporium's (Employer) Petition to Terminate Compensation Benefits. We affirm.

**I.**

On November 7, 1996, Claimant sustained work-related injuries while attempting to unjam a trash compacting machine. Employer issued a Notice of Compensation Payable (NCP) under the Workers' Compensation Act (Act)[1]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

describing her injuries as a "right shoulder, right arm & neck strain & sprain." (Reproduced Record (R.R.) at 12a.) Two subsequent WCJ decisions[2] expanded her injuries to include: carpal tunnel syndrome and a "cervical degenerative process . . . either severely accelerated by the herniations at C5/6 and C6/7 or completely evolved from them;"[3] and "chronic neck pain, chronic myofascial pain syndrome, discongenic disc disease of the cervical spine, traumatically induced cervical disc herniations, radiculitis of the right upper extremity, cervical radiculopathy, and chronic right shoulder syndrome." (R.R. at 31a.)

In October 2013, Employer filed a Termination Petition alleging that Claimant had fully recovered from her work injury as of June 19, 2013. Claimant filed an Answer denying Employer's allegations.

## II.

## A.

Before the WCJ, Claimant testified that her job duties for Employer included checking prices and removing outdated stock. She testified that in November 1996, she sustained her work-related injuries when attempting to dislodge cardboard boxes from a jammed trash compactor. While she did not immediately feel any symptoms, she was subsequently taken to the hospital after her body began

---

[2] Those decisions were issued on March 29, 2006, and July 12, 2007. In addition to expanding Claimant's work injury, both decisions also denied Termination Petitions filed by Employer.

[3] (R.R. at 22a.)

2

shaking and she became unable to move. Eventually, Claimant started treatment with Dr. Doug Kimmel (Dr. Kimmel), who now remains her primary care physician.

Regarding her present condition, Claimant testified that the pain in her neck, right shoulder and right arm has never gone away, but admitted that she never had carpal tunnel syndrome even though it was later added to the description of her work injury. She stated that the pain from her neck goes up and gives her blinding headaches and that the pain in her shoulder makes her so weak she sometimes has to use two hands to lift a cup of coffee. Also, as a result of her spine collapsing, her legs do not work well so that she now requires the assistance of either a wheelchair or walker. She testified that she had heart failure eight years ago and underwent surgery on her right shoulder in 2011.

Regarding her medical treatment, Claimant stated that she sees Dr. Kimmel every month for her work injury and he prescribes her pain medication, but she has not received physical or massage therapy in several years. She also stated that she sees Dr. Kimmel every three months for her heart condition.

Dr. Kimmel, board certified in family practice, testified that he has treated Claimant for her work injury since 1997. He stated that Claimant continued to have ongoing neck and shoulder pain, and intermittent pain into the right upper extremity described as a burning-type pain with ongoing profound limitations. His current working diagnosis is chronic neck pain syndrome, secondary to the injury and associated evolution of degenerative disc disease, status post cervical disc herniation at C5-6, C6-7 levels, chronic right shoulder pain with evolution of arthritic joint

3

disease, status post right shoulder acromioplasty, and tendinitis involving the right shoulder, all related to the work injury. He opined that Claimant is permanently disabled and not able to return to work, and that she has tremendously altered her lifestyle so that she minimizes the pain, which is constantly present to some degree. Dr. Kimmel opined that Claimant's prognosis is poor.

On cross-examination, Dr. Kimmel acknowledged "I don't perceive myself as actively treating [Claimant] for ongoing work-related injuries"[4] except for the use of anti-inflammatory medicine for her neck and shoulder. Although Claimant used to receive pain management injections and used to take pain medication, Dr. Kimmel stated that he has not provided Claimant with any pain management injections or medication for at least the past three years, and that Claimant has not undergone physical therapy in several years. Dr. Kimmel admitted that in the last three years, he did not document conditions regarding her neck in his clinical findings. He opined that Claimant's work injury "plateaued" but that, with time, her condition will likely worsen. (R.R. at 109a.) He admitted that her carpal tunnel syndrome is not related to her work injury. Dr. Kimmel also admitted that he never performed provocative testing on Claimant's shoulder or neck, opining that there was no atrophy in these regions.

**B.**

In support of its Termination Petition, Employer presented the deposition of Dr. Noubar A. Didizian (Dr. Didizian), a board certified orthopedic

---

[4] (R.R. at 88a.)

surgeon with additional certification in upper extremity surgery. Dr. Didizian testified that he examined Claimant on June 19, 2013, for the purpose of conducting an independent medical examination (IME). He stated that the IME included taking her history, reviewing her medical records and diagnostic studies, and performing a physical examination. Regarding her work-related injuries, he noted that after unclogging the trash compacting machine, Claimant reported waking up in the middle of the night with pain in her neck and her legs in the form of cramping of the calves, which is something one sees with spinal stenosis in the older population emanating from the lumbar spine, but not from the cervical spine which was the accepted injury.

Dr. Didizian confirmed that he "did not find any objective evidence for any carpal tunnel or right shoulder problems or neck problems." (R.R. at 149a.) He opined that "when I saw her on June 19, 2013 . . . she was fully recovered from her injuries that she sustained on 11/7/1996 as described and accepted by the employer as well as expanded by the judge." (R.R. at 149a-150a.) Specifically, he opined that "if [Claimant] had carpal tunnel syndrome it was resolved" and that she "fully recovered with respect to her symptoms relative to the cervical degenerative disease [accelerated by herniations at C5-6 and C6-7]." (R.R. at 153a-154a.) Dr. Didizian then stated that Claimant was capable of performing the physical requirements of her pre-injury job as she described it to him and did not require any further medical treatment in relation to her work injury.[5]

_____

[5] Claimant's counsel did not question Dr. Didizian as to whether he acknowledged or evaluated Claimant's other accepted work injury described as: chronic neck pain, chronic myofascial pain syndrome, discongenic disc disease of the cervical spine, traumatically induced cervical disc herniations, radiculitis of the right upper extremity, cervical radiculopathy, and chronic right shoulder syndrome. Moreover, we find no portion of the record indicating that Claimant challenged the competency of Dr. Didizian's testimony before the WCJ.

## C.

Concluding that Employer presented credible and unequivocal medical evidence that Claimant fully recovered from her work injury and was capable of returning to full-duty work without restrictions and that no further medical treatment was warranted, the WCJ granted Employer's Termination Petition. In so finding, the WCJ accepted Dr. Didizian's testimony in its entirety, noting that he was a board certified orthopedic surgeon and that he credibly outlined Claimant's lengthy treatment history and demonstrated a thorough understanding of her work injury and affected body parts. The WCJ rejected Claimant's testimony that she continues to suffer ill effects of her work injury, noting that it is inconsistent with Dr. Kimmel's testimony. The WCJ also rejected the testimony of Dr. Kimmel, noting that he does not perform surgeries in his practice, discontinued formal treatment of Claimant's work injury except for prescribing anti-inflammatory medication, and that he admitted that he does not perceive himself as Claimant's workers' compensation physician.

Claimant appealed to the Board, contending that the WCJ erred when "finding Dr. Didizian more credible than Dr. Kimmel. . . . The Judge's conclusion in this regard are a complete disregard of competent evidence as Dr. Kimmel has been treating the claimant for nearly 20 years and Dr. Didizian has only seen the claimant on one occasion," and because Dr. Kimmel "has been found to be credible by not only this particular Judge but other Judges who have previously dismissed prior termination petitions filed in this case." (R.R. at 186a-187a.) With only this one

6

issue being raised on appeal to the Board,[6] the Board affirmed. Claimant then filed this petition for review.[7]

## III.

## A.

The main issue raised on appeal by Claimant is that the Board erred when granting Employer's Termination Petition because Dr. Didizian's testimony failed to demonstrate Claimant's full recovery from all of her accepted work injuries since the last legal proceeding that addressed the nature and extent of her work injuries. However, we cannot consider this issue because it was not raised before the Board.

Rule 1551(a) of the Pennsylvania Rules of Appellate Procedure provides:

> (a) Appellate jurisdiction petitions for review. Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. **No question shall**

---

[6] 34 Pa. Code § 111.11(a)(2) provides that a party must specifically identify in its appeal documents the particular grounds being appealed to the Board. 34 Pa. Code § 111.11(a)(2) ("An appeal or cross appeal shall be filed with the Board on a form provided by the Board. . . . All forms must contain the following information: . . . A statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient.").

[7] Our review of a decision of the Board is limited to determining whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

**be heard or considered by the court which was not raised before the government unit** except:

> (1) Questions involving the validity of a statute.

> (2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

> (3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. . . .

Pa. R.A.P. 1551(a) (emphasis added); *see also* 2 Pa.C.S. § 703(a) ("A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, **but such party may not raise upon appeal any other question not raised before the agency**. . . .") (emphasis added).

Claimant, while acknowledging "that an appeal from a WCJ's determination must raise and preserve the specific issue sought to be considered,"[8] contends that Employer's failure to offer expert testimony demonstrating a change in her condition was placed at issue when she challenged the credibility determinations. However, nothing in Claimant's appeal notice to the Board suggests that this issue was being raised.

---

[8] (Brief of Claimant at 27.)

Because Claimant entirely failed to raise this issue to the Board, it has been waived. *See McGaffin v. Workers' Compensation Appeal Board (Manatron, Inc.)*, 903 A.2d 94 (Pa. Cmwlth. 2006).[9]

## B.

As to the issue preserved – that the WCJ erred in finding Dr. Didizian more credible than Dr. Kimmel – Claimant contends that the WCJ found Dr. Kimmel not credible by misconstruing his testimony that he was no longer actively treating the work-related injury. What that ignores is that Dr. Kimmel acknowledged that he does not view himself as "actively treating" Claimant. (R.R. at 88a.) This also ignores Dr. Kimmel's statement that, while he has prescribed some anti-inflammatory medication, he has not prescribed Claimant any pain management medication or injections for at least the past three years or physical therapy for the last several years, and that for the last three years, he did not document conditions regarding her neck in his clinical findings, all which indicate that he was not actively treating Claimant's work-related injury.

---

[9] Employer notes in its brief that "Claimant specifically appealed from credibility determinations rendered by the WCJ," (Brief of Respondent at 3), but neither acknowledges nor responds to Claimant's newly raised issues. Regardless:

> It is irrelevant that Employer did not argue in this appeal that the issue was not preserved. Our scope of review, under the rules of appellate procedure, cannot be enlarged by a party's decision. Claimant failed to preserve this issue before the Board and, consequently, the Board did not address it in its decision. . . . Because the issue was not preserved, as clearly stated in Rule 1551, we [cannot] hear it. ("*No question shall be heard* or considered by the court *which was not raised before the government unit.*")

*Manatron, Inc.*, 903 A.2d at 102 n.14 (internal citation omitted) (emphasis in original).

Here, in a thorough and complete decision, the WCJ accepted the medical opinion and testimony of Dr. Didizian in its entirety, noting that he is a board certified orthopedic surgeon, the thoroughness of both his examination of Claimant and his analysis of her medical records. Conversely, the WCJ rejected the testimony of Claimant and Dr. Kimmel because there were various inconsistencies between the two testimonies, and Dr. Kimmel admitted that he does not perform surgeries in his practice and was not formally treating Claimant for her work injuries, save for prescribing her anti-inflammatory medication. Given that the WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight, and we will not disturb these findings unless unsupported by substantial evidence, *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa. Cmwlth. 1995), the Board did not err in rejecting the claim that the WCJ made improper credibility findings.

Accordingly, the Board's order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Gilbert,                              :
                    Petitioner               :
                                             :
          v.                                 : No. 1576 C.D. 2016
                                             :
Workers' Compensation Appeal                 :
Board (Drug Emporium),                       :
                    Respondent               :

# **O R D E R**


AND NOW, this 16<u>th</u> day of  <u>February</u>, 2017, it is hereby ordered that the order of the Workers' Compensation Appeal Board dated August 23, 2016, is affirmed.


_____
DAN PELLEGRINI, Senior Judge